JOURNAL ENTRY AND OPINION
This is an appeal from an order of Parma Municipal Court Judge Timothy P. Gilligan adopting the decision of Magistrate Edward J. Fink that awarded appellee Fred Seleman $547.61 plus interest in a small claims court action based upon breach of an automobile lease agreement. Appellant Ganley, Inc. (Ganley) claims that the parol evidence rule barred Seleman from proving any contract terms other than those contained in the parties' written agreement. We disagree and affirm.
From the record we glean the following: On January 14, 2000, Seleman, nearing the end of his lease with Mazda American Credit (MAC), drove his Mazda 626 to Ganley's Parma dealership to inquire about leasing or buying a new car. Although the lease would not expire until May 2000, Seleman had incurred excessive mileage and minor upholstery damage and wanted to rid himself of that car and all further obligations under the MAC lease. He claimed he told this to Ganley salesman Nick Lucas and agreed to lease a new Hyundai that day if Lucas would finalize a deal that would satisfy his requirements. Seleman and Lucas then negotiated a lease for a Hyundai Tiburon with Lucas periodically conferring with the sales manager, Gus Stamatis. According to both Lucas and Stamatis, a salesperson has no independent authority to bind Ganley, and the terms of all agreements must be approved by the sales manager. Seleman, however, had no knowledge of the conversations between Lucas and Stamatis, but knew only that Lucas had inspected the Mazda, had called MAC to determine its buyout value, and had continually assured him he would drive away in a new car, that Seleman's security deposit on the MAC lease would be used as a set-off and he would owe no further debt on the MAC lease. An agreement was reached which included a $500 rebate from Hyundai that Ganley would pay directly to MAC, and which Seleman understood would transfer to Ganley any further obligations he had to MAC. Seleman drove away in the new Hyundai and Ganley retained the Mazda 626.
When Seleman learned that on February 1, 2000, MAC had withdrawn $249.99, the monthly MAC lease cost, from his bank account, he notified Ganley of the withdrawal, but was told Ganley had no obligation to pay off the balance of the MAC lease. On May 31, 2000, MAC, through a collection agency, demanded an additional $297.62.
Seleman filed a small claims action against Ganley on June 20, 2000, seeking $547.61 to cover the remaining payments on the Mazda lease and on July 11, 2000, trial was held before the magistrate. In addition to the testimony of Seleman, Lucas, and Stamatis, the parties introduced and discussed several documents evidencing the transaction. Seleman presented a handwritten proposal that bore his signature and included a note indicating that a $500 check would be sent to MAC and to which Lucas had added, at Seleman's request, the words Dealer Responsible for the payment to MAC.
Ganley introduced a proposal sheet that Lucas claimed was the opposite side of the piece of paper Seleman submitted. The document listed Seleman's name, address, the type of car he was leasing from Ganley, and listed the Mazda as a trade-in vehicle. The form also had handwritten terms identifying monthly payments for 36-month and 60-month leases with each proposal indicating that $500 would be paid to MAC. Ganley next introduced a We Owe form stating that Seleman was entitled to a mobile phone as part of the transaction, and again indicating that Ganley would send a $500 check to MAC.
Ganley's lawyer also introduced the signature page of the lease agreement signed by both Seleman and Stamatis, that Stamatis testified was a copy of the lease order that was detailed as far as the payment and the financial responsibility up front from Mr. Seleman before the deal went into finance and the lease contract was typed. This document did not mention the Mazda lease, stated only that Seleman was entitled to a $500 rebate, and contained an integration clause stating that this contract represents the entire agreement between the seller and the purchaser and will not be changed by any oral agreements unless those agreements are reduced to writing and accepted by both seller and purchaser. Ganley did not present the Hyundai lease agreement as a contract that superseded the agreement concerning the Mazda lease payments.
Ganley contended that the parol evidence rule barred Seleman from testifying about an oral contract not reflected in the writings between the parties, and stressed that the two proposal sheets and the we owe form were the written agreement concerning the Mazda lease.
On July 17, 2000, the magistrate rendered a decision that rejected Ganley's parol evidence argument and decided in Seleman's favor, finding that Seleman had requested that the Hyundai lease end his obligation to MAC and that Ganley agreed. Ganley filed objections to the decision, again arguing that the parol evidence rule barred Seleman's testimony. On August 17, 2000, the judge overruled the objections, adopted the magistrate's decision, and entered judgment for Seleman for $547.61 plus interest from July 11, 2000.
Ganley asserts a single assignment of error:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING THE OBJECTIONS OF THE DEFENDANT-APPELLANT TO MAGISTRATE'S DECISION AND BY ADOPTING THE DECISION OF THE MAGISTRATE AND ORDERING JUDGMENT IN FAVOR OF THE PLAINTIFF-APPELLEE.
A judge must make an independent review of legal conclusions before adopting a magistrate's report. Wade v. Wade (1996), 113 Ohio App.3d 414,418-19, 680 N.E.2d 1305, 1307-08. When a party objects to the magistrate's conclusion, a judge also makes a de novo review of the factual issues raised and supported by the objecting party. We then review a judge's actions for abuse of discretion. Id.
The magistrate concluded that Ganley and Seleman orally agreed that Ganley would pay Seleman's financial obligations to MAC for the Mazda lease, and Ganley has not challenged this finding of fact. It only contends that Seleman should not have been allowed to prove the existence of those contract terms through parol evidence. The parol evidence rule, R.C. 1310.09,[1] states as follows:
 Terms with respect to which the confirmatory memoranda of the parties agree or that otherwise are set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms that are included in their agreement may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented by both of the following:
 (A) Course of dealing, usage of trade, or course of performance;
 (B) Evidence of consistent additional terms, unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.
The parol evidence rule is designed to protect the integrity of written agreements and thereby encourage parties to put all contractual terms in writing. Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782,788-89. The rule does not apply, however, absent an initial finding that the written agreement contains final terms or is the complete agreement of the parties. Id.; Camargo Cadillac Co. v. Garfield Enterprises, Inc. (1982), 3 Ohio App.3d 435, 439, 445 N.E.2d 1141, 1145.
Ganley contends that it entered a complete and final written agreement with Seleman, and the MAC lease payments constituted additional or contradictory terms not contained in that agreement. As noted, however, Ganley did not present the entire Hyundai lease agreement containing the integration clause as the controlling agreement, apparently conceding that any agreement concerning the old MAC lease was not intended to be included in the new lease agreement. See Restatement of the Law 2d, Contracts (1981) 137-39, Section 216(2)(b), comment d (parol evidence rule does not exclude terms naturally omitted from formal contract such as lease); see, also, Cuyahoga Savings Assn. v. Young (December 31, 1975), Cuyahoga App. No. 34344, unreported.
Ganley instead relied upon three documents evidencing that it agreed to pay $500 to MAC, apparently contending that these documents were confirmatory memoranda showing a final agreement that Ganley would pay $500, and only $500, to MAC, and that Seleman would be responsible for any remaining amounts owed under that lease. Seleman argued that the written terms showed only the disposition of his $500 rebate from the Hyundai transaction, and were not intended to show the full agreement concerning the MAC lease. The magistrate found that the written portion presented by Ganley was not the complete agreement of the parties, and the oral agreement concerning the MAC obligations was a consistent additional term, because the written agreement was silent on that issue and the judge adopted these conclusions.
Ganley stressed that the $500 payment came directly from Ganley, and was not the disbursement of a rebate owed to Seleman from the Hyundai transaction, in an effort to show that the agreement to pay $500 went beyond merely distributing the rebate owed Seleman, and was intended to expressly limit Ganley's obligations to both Seleman and MAC. While the documents might reasonably be so interpreted, there is another reasonable interpretation and, therefore, the magistrate was justified in hearing evidence of the parol agreement to explain or supplement the ambiguous or incomplete written terms. Money Station, Inc. v. Electronic Payment Services, Inc. (1999), 136 Ohio App.3d 65, 71, 735 N.E.2d 966, 970; Ohio Savings Bank v. H.L. Vokes Co. (1989), 54 Ohio App.3d 68, 73,560 N.E.2d 1328, 1333-34.
Ganley also argues that because Nick Lucas had no authority to enter an agreement without Stamatis's approval, the written terms must represent the entire contract. We agree with the magistrate and judge that Seleman cannot be faulted for believing he had reached a valid agreement with Lucas because he was not aware of Lucas' inability to contract for Ganley. Had he been aware, however, Seleman could reasonably believe that Lucas presented the oral agreement to Stamatis during their private conversations, and that Stamatis had approved. The judge was justified in concluding that the $500 payment to MAC did not contradict any further terms concerning the Mazda lease, and that the informal, handwritten documents were not intended to be the complete and exclusive statement of the terms of the agreement, thereby allowing parol evidence to establish Ganley's obligation to pay Seleman's indebtedness under the MAC lease.
The judgment is affirmed.
It is ordered that the appellee recover from appellant his costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________ ANNE L. KILBANE, J.:
TIMOTHY E. McMONAGLE, P.J., AND ANN DYKE, J., CONCUR.
[1] Ganley cites an identical provision, R.C. 1302.05, applying to sales of goods, although R.C. 1310.09, concerning leases is, technically, the applicable provision here.